FOR THE UNITED STATES DISTRICT COURT
IN THE DISTRICT OF NEW MEXICO

JOHN R. MCCAULEY,

     Plaintiff,

     v.                                       CIV. No. 11-3  GBW/CG

BOARD OF COMMISSIONERS
FOR BERNALILLO COUNTY,

     Defendant.

## ORDER GRANTING SUMMARY JUDGMENT

This matter is before the Court on Defendant's Motion for Summary Judgment and supporting Memorandum Brief.  *Docs. 75, 76.*  I have reviewed the parties' briefing (*docs. 86, 88*) and the relevant law.  I find Defendant's motion well founded, and I will GRANT it.

### I.    BACKGROUND

Plaintiff John McCauley is a former lieutenant with the Bernalillo County Sheriff's Department (BCSD).  An employee since 1992, over the course of Plaintiff's tenure at BCSD he received several promotions, so that by 2008 Plaintiff was serving as Lieutenant for the Judicial Operations Division at BCSD.  *Doc. 47* ¶¶ 6-8.  In this capacity, Plaintiff had supervisory responsibility for a number of staff.  *Id.* ¶ 9.  Plaintiff cites two incidents that occurred while he was supervising this division that allegedly

1

led to retaliation against him.  First, in the summer of 2009, Plaintiff, in his capacity as
supervisor, attempted to discipline two female subordinates for violations of BCSD
policy.  *Id.* ¶¶ 10-13.  As a result of Plaintiff's actions, the female subordinates
complained about Plaintiff to his supervisor, Captain Matthew Thomas, who in turn
apparently countermanded Plaintiff's disciplinary actions and instructed Plaintiff to
"treat females differently" from the male employees under Plaintiff.  *Id.* ¶¶ 14-16.  After
this incident, the relationship between Plaintiff and Captain Thomas deteriorated, with
Plaintiff feeling that his authority was significantly undercut with regard to his
subordinates and that Captain Thomas was "hostile" to him.  *Id.*  ¶¶ 17-23.  In
particular, Plaintiff contends that, after his attempted discipline, the female
subordinates continued to violate BCSD policy and never received any sort of
punishment, while other employees making comparable policy violations were
penalized.  *Id.* ¶¶ 23-24.

At some point later in 2009, Plaintiff again sought to discipline a female
subordinate -- this time for dressing inappropriately.  *Id.* ¶¶ 24-27.  Rather than
approach the employee directly on that occasion, Plaintiff consulted Captain Thomas,
who again countermanded Plaintiff.  *Id.*  At this point, Plaintiff told Captain Thomas
that he felt that, because of the captain's interference, Plaintiff was unable to exert any
supervisory authority over his subordinates.  *Id.* ¶¶ 27-28.  A few weeks after Plaintiff
raised the dress issue, Plaintiff was the subject of an employee complaint and was

placed on administrative leave for six months.  *Id.* ¶¶ 27-34.  In February 2010, Plaintiff

filed a complaint with the Equal Employment Opportunity Commission (EEOC).  *Id.* ¶¶

35.  In October 2010, and January, April, and August of 2011, the BCSD advertised open

captain positions.  *Id.* ¶¶ 36.  Plaintiff  applied to each of the these openings, but each

time was not selected.  *Id.* ¶¶ 37-40.  He ultimately retired in January 2013.

Plaintiff now brings this action contending that he was not promoted because of

a combination of age discrimination (he was the most senior lieutenant in the

department and, at 57-58, was at least ten years older than some of the candidates who

were ultimately promoted) and retaliation for complaining about the unequal employee

discipline in the Judicial Division, in violation Civil Rights Act of 1964, 42 U.S.C. §

2000(e) (Title VII), and the New Mexico Human Rights Act.  *Id.* ¶¶ 37-41, 46-52.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires that a party seeking summary

judgment demonstrate that "there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant

bears the initial burden of "show[ing] 'that there is an absence of evidence to support

the nonmoving party's case.'"  *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891

(10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)) (internal

quotation marks omitted).

Summary judgment is proper only if a reasonable trier of fact could not return a verdict for the nonmoving party.  *Celotex*, 477 U.S. at 323.  Once the movant meets this burden, Rule 56(e) requires the non-moving party to designate specific facts showing that "there are . . . genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex*, 477 U.S. at 324.  Further, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255.

The court must adhere to three principles when evaluation a motion for summary judgment.  First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial.  *See Liberty Lobby*, 477 U.S. at 249.  Second, the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party.  *See Hunt v. Cromartie*, 526 U.S. 541, 551–54 (1999).  Third, the court cannot decide any issues of credibility.  *See Liberty Lobby*, 477 U.S. at 255.  "[T]o survive the . . . motion, [the nonmovant] need only present evidence from which a jury might return a verdict in his favor."  *Id*. at 257.

## III.   UNDISPUTED FACTS

1.  Plaintiff was hired by the BCSD in 1992 as a cadet.  *Doc. 76*, Ex. A.

2.  On March 11, 2000, Plaintiff was promoted to Sergeant, a position he would

    maintain until his promotion to Lieutenant on December 13, 2003.  *Id.*

3.  Plaintiff remained a Lieutenant with BCSD until he retired on January 1, 2013.

    *Id.*

**PLAINTIFF'S MANAGEMENT OF FEMALE SUBORDINATES**

4.  Plaintiff became the lieutenant in charge of BCSD's Judicial Operations Division

    (JOD) on September 13, 2008.  Among Plaintiff's responsibilities was the

    supervision of the staff in the JOD.  *Doc. 76*, Ex. A.

5.  While Lieutenant at JOD, a female employee at one of Plaintiff's former

    supervisory posts (the Field Services Division), Sergeant Jessica Tyler, filed a

    complaint against Plaintiff in which she alleged that Plaintiff discriminated

    against her on the basis of her gender while she was his subordinate.  *Doc. 76*,

    Exs. A, F.

6.  BCSD retained an outside investigator, Angela Baldwin, from First Line

    Resources, LLC, to investigate Sgt. Tyler's complaint.  *Doc. 76*, Ex. G.  Ms.

    Baldwin submitted a report on March 31, 2009, in which she noted that Plaintiff

    had been the subject of complaints of discriminatory treatment by multiple

    different female employees from 2001 to 2009.  These complaints included:

    a.  On August 23, 2001, Detective Ramona Jennings, Janet Barela, and Jennifer

        Roth each complained that, in supervising them, Plaintiff applied

5

discipline in a discriminatory way against them on the basis of their gender. Their complaints were substantiated and Plaintiff was put on a behavior modification plan.

b. An uninvestigated claim by Robin Hopkins, who had received a letter of reprimand from Plaintiff in 2003, that Plaintiff subjected her to overly strict supervision and discriminatory treatment on the basis of her gender.

c. Unsubstantiated complaints by Adrianna Barela and Renee Ulrich in 2004 and 2005 respectively, again complaining of overly strict supervision on the basis of gender.

d. An unsubstantiated complaint by Daphne Garcia made in May 2006 that Plaintiff had "yelled at her and touched her inappropriately" pursuant to a conflict about Ms. Garcia's failure to cover another deputy during a traffic stop.

e. An altercation between Plaintiff and Felicia Henderson reported on February 27, 2009, from which no disciplinary action was taken, in which Ms. Henderson reported that Plaintiff yelled at her and treated her in that manner because of her gender.

f. In February 2009, Sergeant Adrianna Escalante complained to Captain Thomas about Plaintiff's discriminatory treatment of her, including: threatening to remove her from her position, requiring her to change

6

shifts, reducing her overtime pay, and micromanaging her day-to-day

performance.

Ms. Baldwin's report goes on to note that, with the exception of one female

subordinate, those officers making supportive statements of Plaintiff's

management style were all male.  *Doc. 76*, Ex. H.

7.  Ms. Baldwin submitted a second report on June 19, 2009, addressing Sgt.

Escalante's claims against Plaintiff.  *Doc. 76*, Ex. J.

8.  On October 9, 2009, Ms. Elizabeth Vaquera, an administrative assistant with the

JOD, complained to Captain Thomas that Plaintiff had ordered Andrea Gonzales,

the JOD's office manager, to inform her that her shirt violated the office dress

code.  *Doc. 76*, Ex. K.  Ms. Vaquera stated that she felt she had been

inappropriately singled out for this violation by Plaintiff.  *Id.*

9.   Upon receipt, Captain Thomas began an investigation of Ms. Vaquera's

complaint.  *Doc. 76*, Ex. M.

10. Pending the resolution of this investigation, on October 26, 2009, Plaintiff was

put on administrative leave.  *Doc. 76* Exs. A, L, M, N. Plaintiff's administrative

leave terminated on April 26, 2010.  *Id.*, Ex. A.

11. While on administrative leave, on December 21, 2009, Plaintiff lodged a

complaint with the Bernalillo Human Rights Department, alleging that Captain

Thomas had discriminated against him on the basis of gender, shown

"favoritism" towards Ms. Vaquera, and retaliated against Plaintiff. *Doc. 76*, Ex. O.

12. On February 18, 2010, Plaintiff filed a "Charge of Discrimination" with the EEOC

against the BCSD, alleging that he was being discriminated against on the basis

of his gender and subjected to a hostile work environment.  He further alleged

that a female employee[1] had received preferential treatment from Captain

Thomas.  *Doc. 76*, Ex. P.

13. Ms. Baldwin was again engaged, this time to investigate the Vaquera incident.

*Doc. 76*, Ex. Q.  Ms. Baldwin explicitly found that Plaintiff had not discriminated

against Ms. Vaquera on the basis of her gender, but could not reach a conclusion

as to whether or not the treatment of Ms. Vaquera was unfair in relation to the

treatment of similarly situated employees.  Ms. Baldwin also found that

Plaintiff's counter allegations of favoritism and retaliation were unsubstantiated.

*Id.*

**PLAINTIFF'S APPLICATIONS FOR PROMOTION**

14. Plaintiff applied unsuccessfully for a captain's position at least twice in 2008 and

2009.  *Doc. 76*, Ex. A., *Doc. 86*, Ex. 1

15. Plaintiff again sought promotion to captain on October 26, 2010.  He was

interviewed for the position, but was not promoted. *Doc. 76*, Exs. A, R.  The

---

[1] This is clearly a reference to Ms. Vaquera, although she is not identified by name in the complaint.

person promoted, Lieutenant Greg Rees, ultimately turned down the promotion. *Doc. 76,* Ex. A.

16. On January 1, 2011, Danny Houston assumed the position of Sheriff of Bernalillo County. *Doc. 76,* Ex. S. He appointed Ron Paiz to the position of Undersheriff and asked Undersheriff Paiz to develop a screening process for candidates for promotion to exempt positions, including the position of captain. *Id.* This process was used for all captain positions posted in 2011. *Id.* The process involved an initial determination of eligibility based on the qualifications set forth in the posting, with eligible candidates then receiving an oral interview from a panel of three experienced law enforcement professionals who were not employed at BCSD. *Id.*

17. The oral interviews were audio-recorded, and the panel members were permitted to take notes and supplied with the candidates' resumes. *Doc. 76,* Exs. A, R, S. After the interviews, any documentation was immediately destroyed pursuant to the standard operating procedure. *Doc. 76,* Ex. A, R, S. The recordings of the interviews, which should have been preserved under the standard operating procedure, have been lost by the Bernalillo County Human Resources Department. *Doc. 76,* Exs. A, R, S.

18. At some point after Sheriff Houston assumed office, he referred to Plaintiff as "old school." *Doc. 76,* Exs. A, R.

9

19. On January 7, 2011, Plaintiff, then 57, applied for promotion to captain for the spot declined by Lt. Rees. *Doc. 76*, Ex. A. He was interviewed on January 13, 2011 by three outside law enforcement officials: Allen Banks and James Lehner of the Albuquerque Police Department (APD) and Tanya Smith of the Rio Rancho Police Department (RRPD). *Doc. 76*, Exs. A, S, T, U, V.

20. The panel ultimately recommended Lieutenant Scott Baird, then 45 years old, for promotion. Plaintiff concedes that Lt. Baird was qualified for the promotion to Captain. *Doc. 76*, Exs. A, W, *Doc. 86* at 8. Lt. Baird was promoted to Captain. *Doc. 76*, Ex. S.

21. Plaintiff, then 57 years old, again sought promotion to captain on April 27, 2011. *Doc. 76*, Ex. A. He was interviewed for the position on May 4, 2011 by three outside law enforcement officials: Pete Kassetas of the New Mexico State Police (NMSP), Rae Mason of the APD, and Steve Beckett of the RRPD. *Doc. 76*, Ex. S.

22. The panel ultimately recommended Lt. Rees, then 42 years old, for promotion.[2] Plaintiff concedes that Lt. Rees was qualified for the promotion to Captain. *Doc. 76*, Ex. Z, *Doc. 86* at 10. Lt. Rees was promoted to Captain. *Doc. 76*, Ex. S.

---

[2] As to the May 2011 oral board, Plaintiff objects to Defendants' assertion that the board identified Lt. Rees as the top candidate for promotion. His basis is that "[w]ithout the notes that were destroyed and the recordings that were lost, there is no objective evidence to determine who was selected." *Doc. 86* at 10. However, regarding who was selected by the board, Defendants have presented the affidavit of an observer. *See doc. 76*, Ex. S. Plaintiff has pointed to no evidence to contradict this testimony. Thus, notwithstanding the lack of additional evidence, this fact is not in genuine dispute.

23. On July 8, 2011, Plaintiff filed a Charge of Discrimination with the New Mexico

    Department of Workforce Solutions, Human Rights Bureau (HRB).  *Doc. 76*, Ex.

    AA. Plaintiff alleged he was been discriminated against in the promotion process

    for Captain in October 2010 and January and April2011 on the basis of his age.

    *Id.*  He identified the earliest date of discrimination as October 1, 2010 and the

    latest date as June 22, 2011.  *Id.*

24. Plaintiff filed an essentially identical Charge of Discrimination with the HRB on

    August 2, 2011.  *Doc. 76*, Ex. BB.  He identified the latest date of discrimination in

    this Charge as "Present." *Id.*

25. On August 1, 2011, Plaintiff, then 58 years old, again sought promotion to

    captain.  *Doc. 76*, Ex. A. He was interviewed for the position on August 8, 2011 by

    three outside law enforcement officials: Pete Kassetas, Rae Mason, and Conrad

    Candelaria of the United States Marshals Service.  *Doc. 76*, Ex. S.

26. The panel ultimately recommended Lieutenants Jason Katz, then 38 years old,

    and Jessica Tyler, then 36 years old, for promotion. [3]  Plaintiff concedes that Lts.

    Katz and Tyler were qualified for the promotion to Captain. *Doc. 76*, Ex. A, *Doc.*

    *86* at 11-12. Lts. Katz and Tyler were promoted to Captain. *Doc. 76*, Ex. S.

---

[3] As to the August 2011 oral board, Plaintiff objects to Defendants' assertion that the board identified Lt. Katz and Lt. Tyler as the top candidates for promotion.  His basis is that "[w]ithout the notes that were destroyed and the recordings that were lost, there is no objective evidence to determine who was selected." *Doc. 86* at 11.  However, regarding who was selected by the board, Defendants have presented the affidavit of an observer.  *See doc. 76*, Ex. S.  Plaintiff has pointed to no evidence to contradict this testimony.  Thus, notwithstanding the lack of additional evidence, this fact is not in genuine dispute.

27. Plaintiff did not apply for any further promotions prior to his retirement.  *Doc. 76,* Ex. A.

## IV.   PLAINTIFF'S AGE DISCRIMINATION CLAIMS

### A.      Plaintiff's Federal Age Discrimination Claim

Plaintiff alleges that he was denied promotion in January, April, and December of 2011 on the basis of his age, noting that each of the candidates ultimately promoted was at least ten years younger than he was.  A review of the Complaint shows that Plaintiff pleads his federal claim of age discrimination under Title VII.  *Doc. 1,* ¶¶ 1, 47. Age is not one of the protected classes set forth in Title VII.  *Kremer v. Chem. Constr. Corp.,* 456 U.S. 461, 465 n. 4 (1982).  This error is not, however, fatal to Plaintiff's action, provided that his Complaint gives Defendant sufficient notice of his claim.  *See Homoki v. Conversion Serv. Inc.,* 717 F.3d 388, 402 (5th Cir. 2013) (citation omitted) (explaining that if a pleading alleges facts upon which relief can be granted, it states a claim even if it misidentifies the legal theory giving rise to the claim); *accord Hatmaker v. Memorial Med. Ctr.,* 619 F3d 741, 743 (7th Cir. 2010).  Given that Defendant's motion for summary judgment assumes that Plaintiff's claim is brought under the correct statute, the Age Discrimination in Employment Act of 1967 (ADEA), the Court must conclude that Defendant had sufficient notice of the proper theory under which Plaintiff's legal claim should be brought.  *Doc. 77* at 17.

Where, as here, a plaintiff seeks to establish a claim of age discrimination through indirect proof, the Court applies the *McDonnell Douglas* framework as adapted by the Tenth Circuit for ADEA claims. *Jones v. Unisys Corp.*, 54 F.3d 624, 630 (10th Cir. 1995). Typically, a plaintiff must make a *prima facie* showing of age discrimination before his claim can proceed. Here, Defendant concedes that Plaintiff has established a *prima facie* case for age discrimination. *Id.* at 18.

With Plaintiff's *prima facie* showing made, the burden shifts to Defendant to produce a "legitimate, nondiscriminatory reason" for the decision. *Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 985 (1996). All the Defendant is obligated to do is "explain its actions against the plaintiff in terms that are not facially prohibited by Title VII." *Id.* at 1317. Once this proffer is made, the *prima facie* showing is no longer relevant. *Ingels v. Thiokel Corp.*, 42 F.3d 616, 621 (10th Cir. 1994) (abrogated on other grounds by *Martinez v. Potter*, 347 F.3d 1208 (10th Cir 2003)). Instead, Plaintiff must then set forth evidence that age was a determining factor in the relevant employment decision by either showing that the defendant's proffered reasons were merely a pretext for age discrimination or by producing direct evidence of age discrimination. *Id.*

Defendant here states that for each of the three promotional processes at issue, the candidates ultimately selected by the panels were better qualified than Plaintiff for promotion, based not only on their years of experience as police officers, but also on their interviews with the panels. *Doc. 77* at 20. As Plaintiff concedes, Defendant has

13

therefore met its admittedly light burden.   *Doc. 86* at 16, *see Anaeme v. Diagnostek, Inc.,* 164 F.3d 1275, 1279 (10th Cir. 1999).

Because Defendant has provided a legitimate, nondiscriminatory reason for its employment decisions, Plaintiff is required to demonstrate that this reason is pretextual. Plaintiff must do so by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence . . . ." *Morgan v. Hilti*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quotation omitted). Discriminatory animus may be inferred from a showing of pretext.   *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995).

It is undisputed that both Plaintiff and another candidate in her fifties, were passed over for promotion in each of the promotional rounds at issue.  Nor is it disputed that the length of Plaintiff's on-the-job experience exceeded that of those candidates ultimately selected.  But, as Undersheriff Paiz explained, the decision to promote was based on a combination of resume and interview performance, not pure seniority.  *Doc. 77*, Ex. S ¶¶ 6-7.

Most importantly, the promotion process began with a recommendation from a panel of law enforcement professionals who were not employed by Sheriff Houston or BCSD.  And it is undisputed that Sheriff Houston always promoted the candidate recommended to him by the panel.  *Doc. 77*, Ex. S ¶¶ 12, 15, 17, 19.  Because Plaintiff

14

presents no evidence of an independent age prejudice held by the panel members, his

argument for pretext is that the panel process was in fact a sham manipulated to get the

result allegedly desired by Sheriff Houston -- younger employees.  *Doc. 86* at 16.

Plaintiff cites to a variety of different pieces of evidence that he argues, in the

aggregate, constitute evidence of pretext:

- Sheriff Houston's, and other unnamed BCSD command staffs' comments that Plaintiff was "old school", "old fashioned", "rigid" and "Colonel Sanders."

- Plaintiff's belief that Sheriff Houston put some staff members on diets and exercise programs and directed others to dress a certain way so that BCSD would project a more youthful image.

- Sheriff Houston's direction to Scott Baird, as communicated to Plaintiff, that Baird "get something" on Plaintiff.

- Sheriff Houston's stated preference to a third party that he intended for Scott Baird to receive the first promotion to Captain, which Baird ultimately received.

- The selection of interview questions so as to favor candidates preferred by Sheriff Houston.

- Allen Bank's alleged knowledge of the prior discipline against Plaintiff, in contravention of the hiring process policy that the panels be provided only with the candidates' resumes and no other information.

- Sheriff Houston's alleged disclosure of Lieutenant Clare McCarthy's filing of an EEOC discrimination charge to unnamed third party law enforcement officials.

- The destruction of the interview notes and tapes.

*Doc. 86* at 16-17.

The assertions, especially after considering the evidence that supports them, are insufficient to show pretext in this case.  The first three points establish, at best,[4] that Sheriff Houston was predisposed against Plaintiff due to his age.  But to establish pretext, the remaining points must show that Sheriff Houston was able to control these panels to get the recommendation that he wanted.

With respect to Sheriff Houston's alleged statement about Baird's promotion, Plaintiff does not explain exactly what he believes this proves.  The Court speculates that he provides it as proof that Sheriff Houston could indeed control the panel recommendation.  If so, this single statement cannot carry the weight.  Perhaps if Plaintiff could point to similarly prescient statements by Sheriff Houston before the other promotion panels, a reasonable jury could conclude that Sheriff Houston was somehow controlling the panels.  But simply because, on one occasion, Sheriff Houston's preferred candidate was recommended by the panel cannot reasonably support an inference of control.

Plaintiff's next argument demonstrating Sheriff Houston's manipulation of the panel process is that, in spite of the stated policy that all the candidates would be asked the same questions (*see doc. 77* Ex. S ¶ 8), some candidates were asked questions designed to unfairly enhance their performance in the interview.  However, Plaintiff's

---

[4] The Court notes that statements that someone dresses like Colonel Sanders or describing them as "rigid" are particularly weak evidence of age bias.  Perhaps even weaker is the argument that Sheriff Houston's directives for the staff in a law enforcement department to engage in diet and exercise programs indicated a bias against older persons.

evidence of this claim is essentially non-existent.  First, without citing to any evidence, in his Response Plaintiff simply states that he "is aware that the questions were specifically tailored to projects given to preselected applicants."  *Doc. 86* at 6.  Of course, a party attempting to show a genuine dispute must "cit[e] to particular parts of materials in the record…."  FED. R. CIV. P. 56(c)(1).  Assuming Plaintiff is claiming personal knowledge, he has failed to cite to support for that proposition and, thus, it must be rejected.  Moreover, the Court's own review of the record shows no obvious means by which Plaintiff would have personal knowledge from which he could testify.  *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985) (only admissible evidence may be considered when ruling on a summary judgment motion).  Second, Plaintiff points to the testimony of Lt. McCarthy.  *Doc. 86* at 16.  Lt. McCarthy was another individual who applied for promotion but was not selected.  Plaintiff cites to her deposition where she testified as follows:

> Q:     Okay. Now, you said that you believe that you were much more qualified than Manny Gonzales.  Why do you believe that Manny Gonzales was selected if you were much more qualified?

> A:      Well, as I have come to find out over -- or I believe over these seven different processes, that often, if not always, a candidate is preselected. You can have all kinds of boards and all kinds of articulation of how, you know, "Oh, it's fair and it's removed," but if one particular candidate is given projects or something ahead of time and then questions are formulated to ask about those kinds of projects, then you can still have the board, but you have basically preselected who you're going to get. And those are often done -- and I don't remember exactly the questions that were given at that particular process, because, as I said, I have had so many, but as I have come to find out, that seems to be the pattern of behavior.

Q:      And why do you believe that's the pattern of behavior? What basis do you have for that?

A:      Well, as I said, as an example, particular candidates are given something ahead of time, soliciting, "Hey, give me a proposal" on something or other, and then questions are asked in the oral board, "Well, tell me about proposals that you have" -- "and processes and some of the things that you have implemented and what were the results." So that illustrates that there is preselection because those were given to that particular person and that particular person was promoted.

Q:      Can you give me a specific example of that?

A:      Well, more recently, Shureke Covington had asked me for assistance, telling me that his -- he was solicited to present some proposals for something or other and he wanted my help on it because he wanted to do a good job. And then I don't know if it was that particular instance or not, that process, where he was promoted to captain and questions were asked about "Tell me about projects that you have implemented and proposals that you have made." Something like that is what I am talking about.

*Id.* (citing to SDAF #29 which cites to *doc. 86*, Ex. 3 at 94:22-96:11).

This testimony falls far short of admissible personal knowledge on the part of Lt.

McCarthy that Sheriff Houston was (1) causing certain questions to be asked by the

panel, or (2) that those questions were designed to benefit certain applicants.  In fact,

assuming that the panel asked each applicant about projects they implemented or

proposals they made, it would appear to be an entirely expected and appropriate

question.  Perhaps it could show manipulation if supposedly non-preferred applicants

were somehow prevented from implementing projects or making proposals, but Lt.

McCarthy's testimony reveals that such did not occur.  (*Id*. at 96:12-17 [Q: Well, have

you, over the course of your career at the Sheriff's Department, been asked to

formulate ideas or proposals or programs that you think might be good for the Department? A. I have only been asked to do one and I have presented several….”]).

Plaintiff next complains that one of the January panel members, Deputy Chief Banks of the Albuquerque Police Department, knew about the prior disciplinary action against Plaintiff. *Doc. 86* at 16-17. Indeed, the promotion panel policy indicated that the panel members should consider only the applicant's resume and interview. Nonetheless, this alleged fact cannot support the argument that Sheriff Houston was controlling the panel's result. Importantly, the reason Plaintiff is so certain that Deputy Chief Banks knew about his disciplinary history is because Plaintiff himself told Banks about it. *Doc. 86*, Ex. 5 ¶ 4. So, even accepting Plaintiff's assertions as true, this is not a case of Sheriff Houston putting a finger on the scales by telling panel members negative information about non-preferred applicants *ex parte*. .

In this portion of his Response, Plaintiff also claims that "Sheriff Houston had told third party law enforcement officials that [Lt.] McCarthy had filed an EEOC charge of Discrimination." *Id*. at 17. Plaintiff does not explain how this alleged fact supports his argument that the panel recommendations were pretextual. And the Court sees no relevance as to Plaintiff's age discrimination claim.

Finally, Plaintiff argues that the destruction of the interview notes and loss of the interview recordings for each of the processes necessitates the inference that these documents contained evidence demonstrating that Defendant's proffered reasons were

pretextual. *Id.* at 18.  To obtain any spoliation sanctions, an adverse party must first

show that "(1) a party ha[d] a duty to preserve evidence because it knew, or should

have known, that litigation was imminent, and (2) the adverse party was prejudiced by

the destruction of the evidence." *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013,

1032 (10th Cir. 2007).  The Court is unpersuaded that Plaintiff was prejudiced by the

destruction of the notes and tapes.  First, his claim of prejudice contradicts his

implication that he performed poorly relative to other candidates during the interview

because of the unfair tailoring of certain questions.  Second, Plaintiff fails to allege what

factual inference he would have the Court, and later a jury, make based upon the

destruction of the materials.  Because Plaintiff has no evidence that the panel members

harbored any age bias, Plaintiff's theory of pretext is based upon Sheriff Houston's

behind-the-scenes manipulation.  Consequently, there is no reason to conclude that the

tapes/notes would reveal anything of note.  Third, through the discovery process,

Plaintiff could have obtained affidavits or conducted depositions with any or all of the

panel members to determine if they observed anything improper during in the panel

process.  Unlike in cases involving panels from inside an organization, where those

panel members would potentially face pressure from the organization itself, there is no

reason why these outside panel members (at least one of whom was retired at the time)

would have been willing to honestly describe the panel process.  Indeed, Plaintiff

submits no evidence that he even attempted to speak with the panel members.  Given

that the notes and tapes were not Plaintiff's only source of information about the process, he has not established sufficient prejudice to obtain spoliation sanctions.

But most importantly, Plaintiff has failed to show that the destruction of either the notes or the tapes was done in bad faith. Even if a party establishes duty and prejudice, if it "seeks an adverse inference to remedy the spoliation, it must also prove bad faith. Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case. Without a showing of bad faith, a district court may only impose lesser sanctions." *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009) (citations and quotation omitted). Plaintiff never disputes that the notes were destroyed immediately after the interviews as part of the standard operating procedure. With respect to the interview recordings, Defendant has presented sworn testimony that they were inadvertently lost by the Bernalillo Human Resources Department. *Doc. 76* at 10. To support a finding of bad faith, Plaintiff relies primarily on his incredulity that the recordings for all the relevant interviews were lost. *Doc. 86* at 17. However, given that it appears that Plaintiff interviewed with every captain promotion panel between January 2011 through August 2011, it is unsurprising that the human resources department would keep all such interviews in the same place. In any event, the Court declines to find bad faith on this basis.

Given the lack of a showing of either prejudice or bad faith, Plaintiff is not entitled to the favorable inference he seeks in reference to this unavailable evidence.

21

Defendant has provided a legitimate, nondiscriminatory reason for its employment decisions – the recommendation of extra-agency panel based upon its review of the applicants' qualifications and interviews.  Plaintiff has failed to present evidence on which a reasonable jury could find Defendant's reason pretextual.  Thus, the court will grant summary judgment for Defendant on Plaintiff's federal age discrimination claim.

**B.    Plaintiff's NMHRA Age Discrimination Claim**

The NMHRA forbids employer discrimination based on age.  NMSA 1978, § 28-1-7(A).  In order to prevail on his claim, Plaintiff must demonstrate through either direct or indirect evidence that BCSD intentionally discriminated against him on the basis of his age.  The Supreme Court of New Mexico has applied the *McDonnell Douglas* framework "[w]hen considering a violation of the NMHRA."  *Juneau v. Intel Corp.*, 139 N.M. 12, 15, 127 P.3d 548, 551 (2005).  Further, the parties have incorporated their arguments and analysis regarding Plaintiff's federal discrimination claims into their arguments regarding Plaintiff's NMHRA claims.  I therefore find that based on the above analysis, Plaintiff's NMHRA age discrimination claim also fails.  Defendant is granted summary judgment on that claim.

## V.   PLAINTIFF'S RETALIATION CLAIMS

### A.      Plaintiff's Federal Retaliation Claim

In addition to his age discrimination claim, Plaintiff contends that he was denied promotion to Captain on three separate occasions because he complained about gender discrimination in the workplace to his supervisors and to the EEOC. *Doc. 86* at 20.[5] Defendant responds that, in each case, the independent promotion panel responsible for interviewing all qualified candidates determined, for legitimate, non-discriminatory reasons, that another candidate was better suited for promotion. *Doc. 86*, Ex. S.

As an initial matter, Defendant argues that that Plaintiff failed to exhaust administrative remedies as to the August 2011 promotional process. As the Tenth Circuit has explained, exhaustion of administrative remedies is a "jurisdictional prerequisite" to a Title VII suit. *Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir. 1996) (citation omitted). In order to properly exhaust administrative remedies, "the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim; this follows from the rule that each discrete incident of alleged discrimination or retaliation constitutes its own unlawful employment practice for which administrative remedies must be exhausted." *Jones v. United Parcel Serv. Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (citation and quotation omitted).

---

[5] While there were four promotional processes (December 2010, January 2011, April 2011 and August 2011), the first promotion Plaintiff failed to gain in December 2010 was rescinded and Plaintiff was given the opportunity to apply for it again.  Undisputed Facts 15, 16, 19.

As Defendant correctly points out, Plaintiff's latest EEOC charge of discrimination and retaliation was filed on August 2, 2011.  Undisputed Fact 24. Plaintiff filed his final application for promotion on August 1, 2011, but he was not interviewed for the position until August 8, 2011, and his denial of promotion necessarily came at some point later in time.  Undisputed Fact 25.  Defendant is also correct that the exhaustion requirement is designed to provide notice to the defendant employer.  *E.E.O.C. v. Wal-Mart Stores, Inc.*, 576 F. Supp. 2d 1240, 1247-48 (D.N.M. 2008). However, "the original charge is sufficient to support [a civil suit] for any discrimination stated in the charge itself or **discovered in the course of a reasonable investigation of that charge, provided such additional discrimination was included in the [relevant agency's] 'reasonable cause' determination**."  *Id.* (citation and quotation omitted) (emphasis added).  Here, the HRB's Determination of Probable Cause specifically references the fact that Plaintiff was more qualified than all the candidates eventually promoted, not just those promoted in the January and April 2011 processes. *Doc. 86*, Ex. 7 ("Evidence indicates you exceed the four candidates . . . who have been selected for the "Captain" positions.")   The Court therefore concludes that Plaintiff has properly exhausted administrative remedies as to all three claims.

42 U.S.C. § 2000e–3(a) states that it is unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII]."  To make out a retaliation claim under

Title VII, a plaintiff must establish that retaliation was the "but-for" cause of the

relevant employment decision.  *Univ. of Texas Southwestern Medical Center v. Nassar*, 133

S.Ct. 2517, 2533 (2013).   In the absence of direct evidence (which Plaintiff does not

present here – *see doc. 86* at 19-20) a plaintiff may show retaliation under the *McDonnell*

*Douglas* framework.  *Id.* at 1227.  Under this test, plaintiff must first establish a *prima*

*facie* case of retaliation by showing "(1) she engaged in protected opposition to Title VII

discrimination; (2) she suffered an adverse employment action; and (3) there is a causal

connection between the protected activity and the adverse employment action." *Meiners*

*v. Univ. of Kan.*, 359 F.3d 1222, 1229 (10th Cir. 2004).  If the plaintiff succeeds in making a

*prima facie* showing, the defendant must proffer a legitimate, nondiscriminatory reason

for the adverse employment action.  *Id.*   The burden then moves back to the plaintiff,

who must should that the defendant's justification is pretextual. *Id.*

    There are two separate events that Plaintiff cites as protected activities giving rise

to the retaliation at issue here:  first, his complaints to Captain Thomas about the

apparently differential treatment received by some of the female employees, which

occurred in mid to late 2009, and second, his filing of his EEOC complaint in February

2010 while he was on administrative leave.[6]

---

[6] Defendant originally argued that Plaintiff's placement on administrative leave was one of the retaliatory
acts about which Plaintiff complained.  *Doc. 76* at 26.  However, Plaintiff has specifically disavowed that
the placement on administrative leave was itself retaliation. "Defendant attempts to confuse Plaintiff's
retaliation claim by arguing he is complaining about being put on administrative leave. That is not
correct. Plaintiff is complaining about the effect of being placed on administrative leave which
contributed to being denied future promotional opportunities." *Doc. 86* at 21-22.

### 1.    The 2009 Complaints

Defendant argues that the first activity, Plaintiff's 2009 complaints, is not protected, either because it does not constitute "oppos[ition to] an employment practice made unlawful by Title VII." *Doc. 76* at 27, citing *Faragalla v. Douglas Cnty. Sch. Dist. RE 1*, 411 F. App'x 140, 148 (10th Cir. 2011).  The Court agrees.

As Plaintiff himself explains, the genesis of his complaints was that he was not allowed to subject some of his female subordinates to what he believed was appropriate discipline for workplace policy violations.  *Doc. 1* at 2-4.  While he alleges that he was urged to treat his male and female employees differently, he provides no example of either a male subordinate, or himself, being subjected to discipline not imposed on a female employee for similar violations.  Instead, he contends that he was subjected to a hostile work environment because his authority *as a supervisor* was undermined.  *Doc. 1* at 3-4 ("Plaintiff advised Captain Thomas that his refusal to support his requests to discipline the females . . . were causing a hostile work environment for himself as a male supervisor.").  Indeed, nothing in Plaintiff's Complaint indicates that Captain Thomas overrode Plaintiff's attempts at discipline because Plaintiff was male.  Rather, Captain Thomas, in his position as Plaintiff's supervisor, was exercising his authority to correct what he apparently believed was Plaintiff's inappropriate application of discipline to certain female employees.  In fact, the undisputed facts indicate that Plaintiff had a history of particularly strict supervision of female subordinates.  *See*

26

Undisputed Fact 6.  Even granting Plaintiff all favorable inferences, Plaintiff's claim

based on his 2009 complaints amounts to a charge not of gender discrimination, but of

favoritism of certain female employees by Captain Thomas.   Unlike gender

discrimination, favoritism is not an employment practice forbidden by Title VII, and

cannot form the basis for Plaintiff's retaliation claim.  *See Neal v. Roche*, 349 F.3d 1246,

1251–52 (10th Cir. 2003).

 In addition, complaints by managers about their employer's policies, such as

what Plaintiff has alleged here, do not constitute opposition to an employment practice

forbidden by Title VII.  *See Brush v. Sears Holdings*, 466 F. App'x 781, 787 (11th Cir. 2012)

( "In essence, the 'manager rule' holds that a management employee that, in the course

of her normal job performance, disagrees with or opposes the actions of an employer

does not engage in 'protected activity.').  Plaintiff's opposition to Captain Thomas's

actions was not based in a concern about gender discrimination.  Rather "Plaintiff

advised Captain Thomas that his refusal to support his requests for discipline . . .

interfere[ed] with his ability to perform his duties as a supervisor."  *Doc. 1* at 3.  Simply

put, Plaintiff was opposed to Captain Thomas undermining his authority in front of his

subordinates, not to any kind of gender-based discrimination in his unit.

 Plaintiff has failed to demonstrate that his 2009 complaints constituted a Title VII

protected activity.  He has therefore failed to establish a *prima facie* case of

discrimination as it relates to his 2009 complaints.

### 2.     The filing of the February 2010 EEOC Charge

Unlike his 2009 complaints, Plaintiff's filing of an EEOC charge is a protected activity under Title VII.  *McCue v. State of Kansas*, 165 F.3d 784, 789 (10th Cir. 1999). Further, Plaintiff's failure to be promoted is an adverse employment action.  *Aquilino v. Univ. of Kan.*, 268 F.3d 930, 934 (10th Cir. 2001).  Therefore, the issue is whether Plaintiff has demonstrated a causal connection between the filing of the EEOC charge in February 2010 and his failure to be promoted in January, April, and December of 2011.

"A causal connection may be shown by 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'"  *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (quoting *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1982)).  As an initial matter, if the protected activity and the adverse employment action occur close enough together in time, causation can sometimes be established purely on that basis.  *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) ("[W]e have held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation.  By contrast, we have held that a three-month period, standing alone, is insufficient to establish causation.").  Here, ten months elapsed between the protected activity at issue and the first instance of Plaintiff's failure to be promoted.  Therefore, Plaintiff must set forth further evidence to demonstrate that it was his filing of the EEOC charge that resulted in his denial of his promotion.

Defendant has offered the affidavits of all three panel members from the January panel, Allen Banks *(doc. 77,* Ex. T ¶ 5), James Lehner, *(id.,* Ex. U ¶ 5), Tanya Smith *(id.,* Ex. V ¶ 5), two of three panel members from the April panel, Pete Kassetas *(id.,* Ex. X ¶ 5) and Steve Beckett *(id.,* Ex. Y ¶ 5), and two of three panel members from the August panel, Mr. Kassetas again, and Conrad Candelaria *(id.,* Ex. CC ¶ 5), each of which state that the affiant was not aware of Plaintiff's filing of the EEOC charge in February 2010 when they participated in the promotional panels.  Obviously, if the panels were not aware of the EEOC charge, they could not fail to recommend Plaintiff's promotion in retaliation for it.

To avoid summary judgment on this claim, Plaintiff must either show (1) a genuine dispute over whether Sheriff Houston could have retaliated against Plaintiff by manipulating the panels so they would not recommend Plaintiff, or (2) a genuine dispute over whether the panels were aware of Plaintiff's EEOC filing.  *See Liberty Lobby*, 477 U.S. at 257.

With respect to the possibility that Sheriff Houston could use the panel as a cat's paw for his personal hiring decisions, Plaintiff presents the same evidence this Court considered on the issue of pretext above.  As before, Plaintiff presents insufficient evidence upon which a reasonable jury could find he controlled the panels' recommendation.  *See supra* at 15-22.

On creating a genuine dispute as to the panels' knowledge of his EEOC claim, he fares no better.  First, he argues that Undersheriff Paiz knew of the EEOC charge prior to his involvement in the promotion process, and implies that because he sat in on the panel interviews, he must have informed the panel members about Plaintiff's EEOC charge.  *See, e.g., doc. 86* at 7.  But Plaintiff produces no evidence other than speculation that this version of events actually transpired: his affidavit simply states "the Undersheriff was in all the interviews I attended . . . the Undersheriff was aware of my EEOC charges."  *Doc. 86*, Ex. 5 ¶ 5, *see Hall* F.2d at 1111.  Of course, this statement does not contradict Undersheriff Paiz's testimony that he was present at every panel but never discussed the any of the candidates with the oral boards. *Doc. 77*, Ex. S ¶ 11.  To overcome this deficiency, Plaintiff seeks to rely on an adverse inference based upon Defendants' spoliation of the interview notes and recordings.  However, because Plaintiff has failed to show bad faith, he is still not entitled to such an inference.  *See supra* at 21.

Plaintiff also references that Deputy Chief Banks, a panel member on one of the promotion panels, "knew of my disciplinary history at BCSO in 2009, because I specifically spoke to him about the subject."  *Doc. 86* at 22 (citing SDAF #34 which cites *doc. 86*, Ex. 5).  It is unclear if Plaintiff is arguing that such could support a finding that Banks knew about his 2010 EEOC filing.  If so, there is no support for such a leap.

Finally, Plaintiff points to the testimony of Lieutenant McCarthy to support the contention that the panels were aware of his charge.  *Doc. 86* at 17, Ex. 3 at 204:4-204:20. In fact, Lieutenant McCarthy testified that (1) she was told by her union president that at a meeting the union president attended, Sheriff Houston apparently disclosed the fact that she had filed an EEOC complaint to "command staff or somebody," and (2) that another acquaintance of hers had lunch with Sheriff Houston and Undersheriff Paiz, during which they indicated to Lieutenant McCarthy's acquaintance that they were aware she had brought a lawsuit against them.  *Id.* at 204:4-207:21.  This testimony would support the idea that Sheriff Houston and Undersheriff Paiz were aware of Lt. McCarthy's EEOC complaint.  However, it provides no support for a finding that they knew about Plaintiff's EEOC filing **and** subsequently disclosed it to the promotion panel members.

In the absence of admissible evidence that would create a genuine dispute over whether Sheriff Houston could control the promotion panels or whether the panels knew about Plaintiff's EEOC filing, Plaintiff has failed to establish a causal link between that filing and his non-promotions in 2011.  Because Plaintiff has failed to establish a *prima facie* case of retaliation in regard to the January, April, and August 2011 promotional processes, summary judgment is granted in favor of the Defendant on these claims.

31

###### B.      Plaintiff's NMHRA Retaliation Claim

As discussed above in Section IV.B the above analysis of Plaintiff's federal

retaliation claim is equally applicable to Plaintiff's NMHRA retaliation claim.

Defendant is accordingly granted summary judgment on this claim.

## VI.   PLAINTIFF'S RULE 56(D) REQUEST IS DENIED

Plaintiff requests permission to take the deposition of Scott Baird based on the

statement Baird made to Plaintiff regarding Sheriff Houston's request to Baird to "get

something" on Plaintiff.  *Doc. 86* at 14.  Federal Rule of Civil Procedure 56(d) allows for

limited discovery of "facts essential to justify" a party's opposition to a motion for

summary judgment "when facts are unavailable to the nonmovant." FED. R. CIV. P.

56(d).  Normally, an application under this Rule is treated liberally. *Jensen v.

Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1553–54 (10th Cir. 1993).  It is not,

however, "a license for a fishing expedition . . . ." *Lewis v. Ft. Collins*, 903 F.2d 752, 759

(10th Cir.1990), *see also Schaefer v. Antill*,  2007 WL 709046 at *9 (D.N.M. Jan. 31, 2007)

("Rule 56[d] may not be invoked based solely upon the assertion that discovery is

incomplete or that the specific facts necessary to oppose summary judgment are

unavailable.").

As relevant to this allegation, the Court has rejected Plaintiff's claims because he

has failed to present evidence that Sheriff Houston, even if he had animus toward

Plaintiff, could control the recommendations of the promotion panels.  As the

deposition requested would simply, at best, add additional evidence of animus, it would not serve to rebut the Court's analysis.  As such, the requested discovery is not essential and the request is denied.

**VII.   CONCLUSION**

For the forgoing reasons, the Court DENIES Plaintiff's Rule 56(d) request and GRANTS Defendant's Motion for Summary Judgment as to all of Plaintiff's claims. Plaintiff's Complaint, and all claims therein, are DISMISSED WITH PREJUDICE.

UNITED                                        E JUDGE

**Presiding by consent**